776 F.2d 1236
 3 Fed.R.Serv.3d 837, 19 Fed. R. Evid. Serv. 661,
12 Media L. Rep. 1330
 James W. FITZGERALD, Appellant,
v.
PENTHOUSE INTERNATIONAL, LTD.; Meredith Printing
Corporation; Meredith Corporation; Bob Guccione;
Steve Chapple and Michael L. Greenwood,
United States of America, Appellees.
 No. 84-1035.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 3, 1985.
Decided Nov. 7, 1985.
 
 Thomas J. Keramidas, New London, Conn. (Michael A. Rakosky, Rakosky, Smith, Miller & Papp, P.C., New London, Conn., James T. Haviland, Howard, Kohn, Sprague & Fitzgerald, Hartford, Conn., on brief), for appellant.
 Freddi Lipstein, Washington, D.C., John Philip Miller, Baltimore, Md. (Kaplan, Heyman, Baltimore, Md., Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Baltimore, Md., Barbara L. Herwig, Washington, D.C., Norman Roy Grutman; Miller, Greenspoon, Hendler & Levin, New York City, on brief), for appellees.
 Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal of a libel action on the basis that continued litigation would result in the disclosure of privileged state secrets. James W. Fitzgerald initiated this action following the publication of an allegedly libelous article in Penthouse Magazine. The U.S. Navy moved to intervene on the ground that the government had a national security interest at stake in the trial which could not be adequately protected by the parties, and moved to dismiss the action on the basis that the trial would lead to disclosure of privileged state secrets. The district court granted the motions and dismissed the case. Fitzgerald now appeals. We affirm.
 
 I.
 
 2
 The underlying facts in this case are adequately set forth in our previous opinions and need not be repeated in their entirety here. See Fitzgerald v. Penthouse International, Ltd., 639 F.2d 1076, 1077-78 (4th Cir.1981); Fitzgerald v. Penthouse International, Ltd., 691 F.2d 666, 668 (4th Cir.1982), cert. denied, 460 U.S. 1024, 103 S.Ct. 1277, 75 L.Ed.2d 497 (1983). Briefly, in June 1977 Penthouse Magazine published an article entitled "The Pentagon's Deadly Pets." The article concerned the alleged use of animals by the U.S. Navy and the Central Intelligence Agency for military and intelligence purposes. A portion of the article described scientist James W. Fitzgerald's work with dolphins. This section concluded with an allegedly libelous paragraph which read as follows:
 
 
 3
 Fitzgerald continued his own Florida operation. He even made overtures, possibly with CIA and Navy knowledge, to sell dolphin torpedoes or "open-ocean weapons systems" to Mexico, Peru, Colombia, Chile, Argentina, and Brazil. This private merchandising astounded one of Fitzgerald's associates, who observed: "The work in Key West had been top secret, with only a small handful of people in the whole country knowing of its existence, not to mention its purpose." Yet Fitzgerald wanted to make some fast bucks on the side by turning small countries into "instant naval powers." The Pentagon couldn't possibly object for fear of exposing its whole operation.
 
 
 4
 (J.A.36).
 
 
 5
 In November 1977, Fitzgerald filed suit against Penthouse, the magazine's publisher and printer, the author of the article and Michael Greenwood, a former CIA employee upon whom Penthouse had relied for its information on Fitzgerald's work.[1] The suit alleged that the article libelously charged Fitzgerald with espionage. In July 1979 and again in October 1981, the district court granted summary judgment in favor of the defendants. Fitzgerald v. Penthouse International, Ltd., 525 F.Supp. 585 (D.Md.1981). In appeals from those rulings, this court reversed both times, finding that material questions of fact remained making an award of summary judgment in favor of the defendants inappropriate.
 
 
 6
 Following the second remand, the parties prepared for trial, which was scheduled for Monday, December 5, 1983. On November 22, 1983, Fitzgerald filed a Supplemental Disclosure under Fed.R.Civ.P. 26(b)(4)(A)(i)[2] identifying three expert witnesses he expected to call. According to Fitzgerald's memorandum, Dr. William Von Winkle, scientist in Defense Research at the Naval Underwater Systems Center in New London, Connecticut, would "give expert testimony concerning the manner and method by which scientific work/projects acquire classification and/or degree of classification." He would also examine brochures used by Fitzgerald in marketing his dolphin research "to give an opinion as to whether or not there is anything contained therein that is classified, to what degree therein it is classified, if it is classified. His opinion is that there is nothing contained therein that is now or has been classified." Dr. William A. Carey, scientist in Defense Research at the Naval Research Laboratory, Washington, D.C., would "give expert testimony concerning the manner and method by which scientific work/projects acquire classification and/or degree of classification." Finally, Dr. Gerald L. Berkin, "Head Security Classification [sic]," at the Branch of Security Policy, Division for U.S. Navy, would examine the Fitzgerald brochures and would "testify and give opinion that nothing therein is classified." Plaintiff's Supplemental Disclosure under Fed.R.Civ.P. 26(b)(4)(A)(i) at 3-4, Fitzgerald v. Penthouse International, Ltd., No. M-77-1900 (D.Md. November 22, 1983).
 
 
 7
 When the Navy learned that Fitzgerald intended to call Berkin as an expert witness, the Navy became concerned that important military secrets would be compromised if the case proceeded to trial. On the afternoon of Friday, December 2, counsel for the Navy informed the district court that the Navy intended to file a motion to intervene in the case on the basis that the government had a national security interest at stake in the trial which could not be adequately protected by the parties. The Navy's counsel also indicated that the Navy intended to file a motion to dismiss the case on the basis that the trial would lead to the disclosure of privileged state secrets. On Monday morning, December 5, the Navy filed its motions supported by an in camera affidavit containing classified information. The district court gave Fitzgerald and Penthouse one hour to prepare for oral argument on the motions. Then, immediately following a hearing, the court granted the Navy's motions and dismissed the case in an oral opinion from the bench.[3]
 
 
 8
 Fitzgerald now appeals. He argues, first, that this case cannot reasonably be seen as a threat to national security and consequently the district court erred in allowing the government to invoke the state secrets privilege; and second, that even if state secrets are involved, the remedy of complete dismissal was improper.[4]
 
 II.
 
 9
 The state secrets privilege was recognized by the Supreme Court in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), a wrongful death action arising under the Tort Claims Act concerning the death of three civilians in the crash of an Air Force B-29 bomber. The civilians had been observers on a flight to test secret electronic equipment. The plaintiffs sought discovery of the official accident report from the Air Force and the statements of surviving crew members. The government opposed production, and the Secretary of the Air Force filed a formal "Claim of Privilege," stating that production of the accident report was not in the public interest because "the aircraft in question, together with the personnel on board, were engaged in a highly secret mission of the Air Force." Id. at 4, 73 S.Ct. at 530. In addition, the Judge Advocate General of the Air Force filed an affidavit stating that the discovery request could not be complied with "without seriously hampering national security, flying safety and the development of highly technical and secret equipment." Id. at 4-5, 73 S.Ct. at 530-31. This affidavit also offered to produce the surviving crew members for examination by the plaintiffs regarding any non-classified matters. Id. at 5, 73 S.Ct. at 530-31. The district court ordered the government to produce the documents so that the court could evaluate the government's claim of privilege. When the government refused to do so, the district court ordered that, pursuant to its authority under Fed.R.Civ.P. 37(b)(2)(i), the facts on the question of negligence would be taken as established in the plaintiffs' favor. The government appealed, and the Third Circuit affirmed. Id.
 
 
 10
 Finding that the state secrets privilege had been properly invoked in the district court, the Supreme Court reversed. According to the Court, the state secrets privilegeis not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.
 
 
 11
 Id. at 7-8, 73 S.Ct. at 531-32. (footnotes omitted). While recognizing that courts must defer to properly asserted claims of the state secrets privilege, the Court also emphasized that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." Id. at 9-10, 73 S.Ct. at 532-33.
 
 
 12
 In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.
 
 
 13
 Id. at 11, 73 S.Ct. at 533-34; accord Ellsberg v. Mitchell, 709 F.2d 51, 59 nn. 37-38 (D.C.Cir.1983), cert. denied, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984). In Reynolds, the Court found that the plaintiffs' showing of necessity was "dubious"[5] and therefore the claim of privilege would prevail without need for an in camera examination of the evidence by the district court. The Court remanded the case to the district court for further proceedings without the privileged material.
 
 
 14
 In Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268 (4th Cir.1980) (en banc), this court affirmed the district court's dismissal of an action for tortious interference with reasonably expected future contract rights due to an assertion of the state secrets privilege by the U.S. Navy.[6] In Farnsworth Cannon the propriety of the claim of privilege was not contested. Rather, the question was how or whether the litigation should proceed without the privileged material. The district court dismissed the case, stating that "I don't see how the plaintiff's case can possibly go forward without going into those matters covered by the military and state secrets privilege." Id. at 270.
 
 
 15
 A divided panel of this court reversed and remanded the case for further proceedings. Judge Murnaghan, writing for the majority, reasoned that
 
 
 16
 The unavailability of the evidence is a neutral consideration, and, whenever it falls upon a party, that party must accept the unhappy consequences. If the assertion of the privilege leaves plaintiff without sufficient evidence to satisfy a burden of persuasion, plaintiff will lose. If plaintiff's case might be established without the privileged information, dismissal is not appropriate. The same standards apply to defendants.
 
 
 17
 Id. at 271-72 (citations and footnote omitted). Finding that the plaintiff had sufficient non-privileged evidence to withstand a motion for summary judgment, the panel remanded the case to the district court. Id. at 273-76.
 
 
 18
 In his concurrence and dissent, Judge Phillips differed with the majority on the appropriate scope of the remand. According to Judge Phillips, dismissal of the case would be warranted if:
 
 
 19
 (a) the plaintiff cannot establish a prima facie case because of the privilege; (b) the defendant cannot fairly present a good faith, colorable affirmative defense, or fairly rebut the plaintiff's prima facie case, because of the privilege; (c) the privilege so far obstructs normal proof in respect of the issues presented by the parties as to deprive the litigation process of its essential utility for fair resolution of those issues; or (d) the danger of inadvertent compromise of the protected state secrets outweighs the public and private interests in attempting formally to resolve the dispute while honoring the privilege.
 
 
 20
 Id. at 280 (footnote omitted).
 
 
 21
 Upon rehearing en banc, the full court affirmed the district court's dismissal of the action. Having reviewed the Secretary's in camera affidavit in support of his assertion of the state secrets privilege, the court concluded that
 
 
 22
 Information within the possession of the parties on the periphery of the suppression order would not readily be recognized by counsel, unaware of the specific contents of the affidavit, as being secret or as clearly having been suppressed by the general order of the district court. In an attempt to make out a prima facie case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would inevitably be revealing. It is evident that any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation.
 
 Id. at 281.[7]
 
 23
 As Farnsworth Cannon makes clear, in some circumstances sensitive military secrets will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters. Accord Totten v. United States, 92 U.S. (2 Otto) 105, 23 L.Ed. 605 (1875). However, denial of the forum provided under the Constitution for the resolution of disputes, U.S. Const. art. III, Sec. 2, is a drastic remedy that has rarely been invoked. Compare Reynolds (remanded for further proceedings); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 399-401 (D.C.Cir.1984) (remanded for further proceedings); Molerio v. F.B.I., 749 F.2d 815, 822-26 (D.C.Cir.1984) (decided on the merits); Loral Corp. v. McDonnell Douglas Corp., 558 F.2d 1130, 1133 (2d Cir.1977) (remanded for non-jury trial before a magistrate), and Halpern v. United States, 258 F.2d 36, 44 (2d Cir.1958) (remanded for trial in camera ) with Totten (dismissed), Halkin v. Helms, 690 F.2d 977, 997-1009 (D.C.Cir.1982) ("Halkin II ") (dismissed); and Farnsworth Cannon (dismissed). The difficult task faced by the district court in a case involving state secrets is to determine the category into which a particular case falls.
 
 III.
 
 24
 The case at bar concerns an alleged libel charging the plaintiff with the unauthorized sale of a top secret marine mammal weapons system to other countries. By the time of the December 1983 trial date, the remaining issues in the case, according to the district court, were as follows: (1) whether the article was defamatory and, more specifically, whether the article accused Fitzgerald of engaging in espionage; (2) if the article was defamatory, whether the charge of espionage was true; and (3) if the charge was not true, whether Penthouse had actual doubt about the accuracy of the article, and, if so, whether Penthouse published the article recklessly or with actual malice without further investigation, or with knowledge that the alleged libel was false. (J.A.183).
 
 
 25
 Fitzgerald intended to call expert witnesses to testify to the issue of truth. The witnesses were expected to testify as to whether Fitzgerald's marketing brochures contained classified information. The difficulty such testimony posed was that at least one of the witnesses had personal knowledge of highly classified military secrets relevant to the subject matter of the litigation.[8] The possibility that testimony regarding military secrets would be called for from these witnesses or from Fitzgerald himself led the Secretary of the Navy to intervene.
 
 
 26
 The Secretary described the government's purpose in asserting the state secrets privilege in a non-classified affidavit filed in the district court. According to the Secretary,
 
 
 27
 The marine mammal program provides the Department of the Navy and the United States with extremely valuable information which significantly enhances the development of naval systems dedicated to protecting the national security. The fact that this program exists is unclassified and is well known throughout the relevant scientific community.... The prime example of a beneficial use of marine mammals is the application of trained sea lions to retrieve from the ocean depths objects which have acoustical devices contained within them to aid the sea lions in their location efforts.... [W]hether other such uses have developed from information obtained in the marine mammal program is a classified fact about which no official release of information has ever been made.
 
 
 28
 In the secretary's view, classified aspects of the marine mammal program "enhance[ ] considerably the national security of the United States." Further,
 
 
 29
 public disclosure of the classified information involved in this program could reasonably be expected to cause grave damage to the national security. To the extent that military application is made of marine mammals, it is my opinion that inappropriate disclosures of substantive, classified information concerning the marine mammal program would permit foreign powers to exploit weaknesses perceived, to adopt specific countermeasures or to turn knowledge gained through this program against the United States.
 
 
 30
 (J.A. 124-25). In the Secretary's judgment, it was "probable that classified information relating to the potential military uses of marine mammals [would] be called for, either directly or by a process of elimination," if the case proceeded to trial.[9] (J.A. 126).
 
 
 31
 In evaluating the propriety of the Secretary's motion to dismiss, the district court was particularly concerned with the parties' ability to prove the truth or falsity of the alleged libel without disclosing state secrets. This difficulty was exacerbated by Fitzgerald's attempt to call expert witnesses with knowledge of relevant military secrets to prove that the material contained in his brochures was not classified. In examining witnesses with personal knowledge of relevant military secrets, the parties would have every incentive to probe dangerously close to the state secrets themselves. In these circumstances, state secrets could be compromised even without direct disclosure by a witness.[10]
 
 
 32
 Due to the nature of the question presented in this action and the proof required by the parties to establish or refute the claim, the very subject of this litigation is itself a state secret. Because there was simply no way this particular case could be tried without compromising sensitive military secrets,[11] we conclude that the district court did not err in ruling that the case must be dismissed.
 
 
 33
 In its opinion from the bench, the district court suggested that, under Farnsworth Cannon, any plaintiff who alleges that she was libeled as having engaged in espionage cannot seek redress in a judicial forum. (J.A. 192.) This is not, and, of course, cannot be the case.[12] The state secrets privilege will only come into play when the government is able to convince the court that, due to the nature of proof to be presented in a case, the action presents a substantial threat that state secrets will be compromised. Once the state secrets privilege has been properly invoked, the district court must consider whether and how the case may proceed in light of the privilege. The court may fashion appropriate procedures to protect against disclosure. See generally Comment, Keeping Secrets from the Jury: New Options for Safeguarding State Secrets, 47 Fordham L.Rev. 94, 109-113; J. Zagel, The State Secrets Privilege, 50 Minn.L.Rev. 875, 885-88 (1966). Cf. Classified Information Procedures Act, 18 U.S.C.App. (1980) (procedures for the use of classified information in criminal trials). Only when no amount of effort and care on the part of the court and the parties will safeguard privileged material is dismissal warranted. Totten, Farnsworth Cannon and this case all fall within that narrow category due to the centrality of the privileged material to the very question upon which a decision must be rendered.
 
 
 34
 Accordingly, the judgment of the district court is
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 Hereinafter the defendants will be referred to collectively as "Penthouse."
 
 
 [2]
 Fed.R.Civ.P. 26(b)(4)(A)(i) permits a party to require its adversary to identify any expert witnesses the adversary expects to call, and to disclose the facts and opinions to which each expert is expected to testify
 
 
 [3]
 While a careful consideration of this appeal has led this court to the conclusion that the district court did not err in dismissing this case, the district court's timing was certainly unfortunate. Six years and two successful appeals had passed between the time Fitzgerald filed his complaint and the time the case was finally to come to trial. Fitzgerald had undoubtedly incurred significant expenses in this protracted effort to clear his name. Once the anticipated day of reckoning had finally arrived, Fitzgerald was given only one hour to prepare his challenge to the carefully developed arguments of the government
 When the state secrets privilege is validly asserted, the result is unfairness to individual litigants--through the loss of important evidence or dismissal of a case--in order to protect a greater public value. Often, through creativity and care, this unfairness can be minimized through the use of procedures which will protect the privilege and yet allow the merits of the controversy to be decided in some form. See infra n. 7. However, where, as here, the very question upon which the case turns is itself a state secret, see infra at 15-18, the litigant will often find himself without a forum to redress his grievances. The burden of protection of a public value falls upon him alone.
 The understandable sense of unfairness which a litigant so situated experiences is unnecessarily exacerbated when a district court acts with undue haste to dismiss a case. An important tenet underlying our system of justice is that all litigants, regardless of whether they will ultimately win or lose, must be treated fairly. Particularly in a situation like this, where the litigant will ultimately be denied his day in court, the district court must avoid creating an appearance of unfairness through an unnecessary rush to judgment. The district court's timing in this case did nothing to safeguard state secrets. It simply left the plaintiff with an understandable feeling that justice had not been done. Cf. J. Mashaw, Administrative Due Process: The Quest for a Dignitary Theory, 61 B.U.L.Rev. 885 (1981) (discussing importance of perceptions of fairness to due process doctrine).
 
 
 [4]
 Fitzgerald also claims that the district court erred by allowing Penthouse to assert the state secrets privilege, as that privilege may only be invoked by the government. See United States v. Reynolds, 345 U.S. 1, 8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). This argument is without merit. It is clear from a review of the record below that the district court did not allow Penthouse to invoke the state secrets privilege. Rather, it simply allowed Penthouse to participate in oral argument on the question of the effect the government's assertion of the privilege should have on the litigation. Not surprisingly, Penthouse wholeheartedly agrees with the government that further litigation against Penthouse should be barred
 Finally, Fitzgerald argues that the district court judge should be recused from the case on remand. Due to our disposition of this appeal, this question is moot. We only note that Fitzgerald has offered no evidence to show that the judge has acted out of bias or prejudice stemming from an extra-judicial source. See United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).
 
 
 [5]
 According to the Court,
 necessity was greatly minimized by an available alternative, which might have given respondents the evidence to make out their case without forcing a showdown on the claim of privilege. By their failure to pursue that alternative, respondents have posed the privilege question for decision with the formal claim of privilege set against a dubious showing of necessity.
 Id. Further,
 [t]here is nothing to suggest that the electronic equipment, in this case, had any causal connection with the accident. Therefore, it should be possible for respondents to adduce the essential facts as to causation without resort to material touching upon military secrets. Respondents were given a reasonable opportunity to do just that, when petitioner formally offered to make the surviving crew members available for examination. We think that offer should have been accepted.
 Id.
 
 
 [6]
 The plaintiff in Farnsworth Cannon was a defense contractor with the U.S. Navy. Defendant Grimes was employed by the Navy in an executive position. The suit alleged, in part, that initially Farnsworth Cannon president Robert Doss and vice-president Frances Doss were married. Frances Doss divorced Robert Doss and married Grimes. Frances Doss then formed a new corporation. When contracts between Farnsworth Cannon and the Navy subsequently expired, follow-on contracts which normally would have been awarded to the company were awarded instead to Frances Doss' new corporation, despite Farnsworth Cannon's satisfactory performance on prior contracts. Id. at 269-270
 The state secrets privilege was asserted by the Secretary of the Navy. The Secretary claimed that the subject matter of Farnsworth Cannon's contracts, the organizational structure of the Navy component for which Grimes worked and the nature and scope of Grimes' job responsibilities were military and state secrets. Id. at 269.
 
 
 [7]
 Because the court concluded that, under the facts of that case, the danger that state secrets would be exposed outweighed the interest of the plaintiff in pursuing the litigation, the court had no occasion to consider the question over which the original panel divided: namely, the manner in which a less sensitive case may proceed once certain evidence has become unavailable due to a valid assertion of the state secrets privilege. Compare Reynolds, 345 U.S. at 11-12, 73 S.Ct. at 533-34 (remanded for further proceedings without privileged material); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 400-02 (D.C.Cir.1984) (remanded for further proceedings without privileged material); Molerio v. F.B.I., 749 F.2d 815, 822-26 (D.C.Cir.1984) (reaching the merits of defendants' motion for summary judgment in part through reliance on privileged material submitted in camera ); Loral Corp. v. McDonnell Douglas Corp., 558 F.2d 1130, 1132-33 (2d Cir.1977) (affirming district court's denial of request for jury trial and reference of case to Magistrate to protect secrecy of classified evidence) and Halpern v. United States, 258 F.2d 36, 44 (2d Cir.1958) (remanded for trial in camera ) with Totten v. United States, 92 U.S. (2 Otto) 105, 23 L.Ed. 605 (1875) (dismissal required in case alleging breach of contract to perform espionage because the very subject matter of the litigation was a state secret). See generally Comment, Keeping State Secrets from the Jury: New Options for Safeguarding State Secrets, 47 Fordham L.Rev. 94, 109-113 (1978) (describing options short of dismissal for the protection of state secrets); J. Zagel, The State Secrets Privilege, 50 Minn.L.Rev. 875, 885-88 (1966) (discussing procedures to protect secrets yet allow cases to go forward)
 
 
 [8]
 This difficulty was also present with regard to Fitzgerald, who has personal knowledge of classified matters within the scope of the state secrets privilege in this case
 
 
 [9]
 The Secretary elaborated on the need to assert the state secrets privilege in this case in a classified affidavit which was reviewed in camera by the district court. This court has also reviewed the Secretary's in camera affidavit
 
 
 [10]
 For example, if a witness is questioned about facts A and B, the witness testifies that fact A is not a military secret, and the government objects to any answer regarding fact B, by implication one might assume that fact B is a military secret
 
 
 [11]
 The lack of less drastic options in this case is illustrated by the fact that at oral argument in this appeal Fitzgerald's only suggestion regarding how the case could go forward without disclosing state secrets was that Penthouse should be required to stipulate that the alleged libel was false, thereby obviating the need for further inquiry on the question of truth. As truth or falsity of a defamatory statement is the very heart of a libel action, Fitzgerald's suggestion essentially proves the point that the merits of this controversy are inextricably intertwined with privileged matters. See Halkin v. Helms, 598 F.2d 1, 10-11 (D.C.Cir.1978) ("Halkin I ")
 
 
 [12]
 In Heine v. Raus, 399 F.2d 785 (4th Cir.1968), for example, the plaintiff alleged that a CIA agent had defamed him by stating that he was a Soviet agent. The government claimed the state secrets privilege with respect to certain evidence. The involvement of state secrets in the case did not require dismissal, however. Instead, this court remanded the case to the district court for a determination of whether the defendant uttered the alleged libel with the approval of, or later ratification by, a CIA official. If that were the case, the CIA agent would be immune from suit under Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). To the extent that disposition of this issue would turn on matters within the scope of the state secrets privilege, this court instructed the district court to consider privileged evidence in camera. 399 F.2d at 791. The ultimate result in the case was dismissal, but for reasons unrelated to the state secrets privilege. Heine v. Raus, 305 F.Supp. 816, 818-821 (D.Md.1969), aff'd 432 F.2d 1007 (4th Cir.1970), cert. denied, 402 U.S. 914, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971). See also Comment, Spying and Slandering: An Absolute Privilege for the CIA Agent?, 67 Columbia L.Rev. 752 (1967)