IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-2432

LAWRENCE M. BAREFORD,
Individually, ET AL.,

Plaintiffs-Appellants,

versus

GENERAL DYNAMICS CORPORATION, ET AL.,

Defendants-Appellees,

and

UNITED STATES OF AMERICA,

Intervenor-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

( September 16, 1992 )

Before HIGGINBOTHAM and DUHÉ, Circuit Judges and HUNTER,[*] District
Judge.

HIGGINBOTHAM, Circuit Judge:

We must grapple with the federal government's invocation of

the state secret doctrine to a manufacturing and design defect suit

against the manufacturer of a military weapons system.  We are

persuaded that plaintiffs would be unable to prove their case

without classified information and that the very subject matter of

---

[*]Senior District Judge of the Western District of Louisiana,
sitting by designation.

the trial is a state secret. We affirm the district court's dismissal.

I.

In 1987, during the Iraqi-Iranian War, an Iraqi F-1 Mirage fighter fired two Exocet missiles at the U.S.S. Stark, an Oliver Hazard Perry class frigate stationed in the Persian Gulf. The attack killed 37 crewmen on the Stark, including 23 of the plaintiffs' decedents in this case.

The Navy's official investigation concluded that there were four principle causes of the missiles' successful penetration of the Stark's defenses: (1) the failure of the Stark's commander to recognize the threat posed by the F-1 Mirage fighter; (2) improper watch manning and standing; (3) lack of proper weapon readiness; and (4) failure of the Stark's commander to use radar to warn the fighter to desist its attack. The United States has espoused the sailors' and their families' claims for death and has received over $27 million from Iraq to compensate families for deaths of sailors which has been distributed to the families of the deceased crewmen.

Bareford and other plaintiffs filed this action against several defense contractors including General Dynamics asserting that the Phalanx weapons system was defectively manufactured and designed, that General Dynamics and other contractors fraudulently and deceptively concealed these defects, and that the sailors' deaths or injuries were proximately caused by these defects.

The government intervened and filed a 12(b)(6) motion to dismiss the complaint, on the grounds that (1) the plaintiffs'

claims had been espoused by the U.S. government; (2) the case presented a non-justiciable political question; and (3) the subject of the lawsuit was a "state secret" that was privileged under the state secret doctrine. The contractors filed a similar motion.

In response to these motions, the plaintiffs filed voluminous pleadings and exhibits, including 2,500 pages of affidavits and other documents. A hearing was scheduled on February 14, 1991. One day before the hearing, the government informed the plaintiffs' counsel that it intended to make an <u>in camera</u> production of additional documents. On the same day, government attorneys conducted <u>in camera</u> production before the district court judge. The documents included an affidavit by an admiral and the unabridged version of the Navy Department's official investigation of the Stark incident.

The district court granted the government's motion to dismiss. The district court found that the plaintiffs' action was barred under the state secret privilege, because the trial of the case would require disclosure of classified information sensitive to national security.

## II.

The privilege for state secrets allows the government to withhold information from discovery when disclosure would be inimical to national security. <u>Zuckerbraun v. General Dynamics Corp.</u>, 935 F.2d 544, 546 (2d Cir. 1991); <u>United States v. Reynolds</u>, 345 U.S. 1 (1953). The privilege may be invoked by the head of a governmental department with responsibility over the matter in

question, and the head of the department must give personal consideration to the matter in question. United States v. Reynolds, 345 U.S. 1, 7-8 (1953). A government department may intervene in litigation to which it is not a party and assert the privilege, thereby preventing either party in the litigation from obtaining sensitive government information in discovery.

The effect of the privilege is generally to exclude the privileged evidence from the case. Ellsberg v. Mitchell, 709 F.2d 51, 65 (D.C. Cir. 1983), cert. denied, 465 U.S. 1038 (1984). The plaintiff's case then goes forward without the privileged information and would be dismissed only if the remaining information were insufficient to make out a prima facie case. Halkin v. Helms, 690 F.2d 977, 998-99 (D.C. Cir. 1982). Some courts, however, have held that the privilege can lead to the dismissal of the plaintiffs' case in two other circumstances. First, if the privilege deprives the defendant of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant. In Re United States, 872 F.2d 472, 476 (D.C. Cir.), cert. denied sub nom. United States v. Albertson, 493 U.S. 960 (1989); Molerio v. Federal Bureau of Investigation, 749 F.2d 815, 825 (D.C. Cir. 1984). Second, some courts have held that the court should dismiss if the "very subject matter of the plaintiff's action is a state secret," even if the plaintiff has produced non-privileged evidence sufficient to make out a prima facie case. Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 274 (4th Cir. 1980) (en banc). The reason

for dismissal in these circumstances is that witnesses with knowledge of secret information may divulge that information during trial because the plaintiffs "would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would inevitably be revealing." Farnsworth Cannon, 635 F.2d at 281; cf. Bowles v. United States, 950 F.2d 154, 156 (4th Cir. 1991) ("If the case cannot be tried without compromising sensitive foreign policy secrets, the case must be dismissed.").

### A.

We turn first to the plaintiffs' ability to prove their case without revealing state secrets. Although originally styled as a motion to dismiss for failure to state a claim, we will treat the defendants' motion as a motion for summary judgment because both parties have produced and rely upon evidence outside the pleadings. Plaintiffs contend that they can survive summary judgment pointing to 2,500 pages of affidavits and documents, all assertedly in the public domain. These documents include an affidavit of the former captain of the U.S.S. Stark, two affidavits from former employees of General Dynamics, and information contained in Congressional reports and other published sources. The Secretary of the Navy asserts no privilege for this evidence.[1]

There is a preliminary question of whether the government has validly invoked the state secret doctrine. Bareford asserts that

---

[1]The government maintains that security considerations prevent the Navy Department from either confirming or denying whether the offered evidence is classified information.

Secretary of the Navy H. Lawrence Garrett did not personally review the plaintiffs' documents as required by Reynolds, 345 U.S. at 7-8. We disagree. The government does not target documents produced by the plaintiffs, but objects to the claim which by necessity would rely upon highly sensitive information. Secretary Garrett states in his affidavit that he personally considered the type of evidence necessary to this claim.[2] The Secretary's review was sufficient.

Plaintiffs have succeeded in producing considerable evidence, and present a closer issue than Zuckerbraun v. General Dynamics Corp., 935 F.2d 544 (2d Cir. 1991). In Zuckerbraun, the claims were almost identical to the claims in this case to recover for the death of a sailor in the Stark incident. The defendants responded with an affidavit from the Navy Secretary identical to the affidavit in this case, stating that the design and operation of the Phalanx weapons system were highly classified and sensitive matters and that disclosure of such information in litigation would be "inimical to national security."

The Second Circuit affirmed the dismissal of Zuckerbraun's claim. Judge Winter, writing for the panel, noted that the plaintiffs' claims of manufacturing and design defects at a minimum required proof of what the Phalanx weapons system is supposed to do, whether it was used when the Stark was hit, and, if it was, whether the failure of the system to work was the result of the manufacturers' negligence. The panel noted that "[t]hese questions

_____

[2]A copy of Secretary Garrett's affidavit was published as an appendix to the opinion in Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 548-53 (2d Cir. 1991).

cannot be resolved or even put into dispute without access to data regarding the design, manufacture, performance, functional characteristics, and testing of these systems and the rules of engagement under which the Stark was operating." Zuckerbraun, 935 F.2d at 547. Because this data was subject to the privilege, the panel concluded that "there is no evidence available to the appellant to establish a prima facie case." Zuckerbraun, 935 F.2d at 548.

Plaintiffs distinguish Zuckerbraun on the basis that Zuckerbraun apparently did not offer any non-privileged information on which to build a case. As noted in Zuckerbraun, "appellant has not designated any sources of reliable evidence on the factual issues going to liability". Zuckerbraun, 935 F.2d at 548. By contrast, the plaintiffs point to their 2,500 pages of evidence--eleven Congressional reports, letters, media articles, and eight declarations--that they contend establishes a prima facie case of liability.

Bareford has come forward with substantial evidence from which a judge or jury might find problems, or even wrongdoing, by General Dynamics in its production and testing of the Phalanx system. That alone will not establish a prima facie case. Its claim of manufacturing and design defects requires proof of what the Phalanx system was intended to do and the ways in which it fails to accomplish these goals. This question cannot be resolved without access to detailed data regarding "the design, manufacture, performance, functional characteristics, and testing of these

7

systems." Zuckerbraun, 935 F.2d at 547. Such an analysis of the capabilities of an advanced Navy frigate's defensive systems is the type of judicial disclosure of state secrets the doctrine blocks.

Bareford has come forward with evidence of the intended operation of the Phalanx system, but it is fairly described as evidence of the system's general performance limits, not the necessary detailed analysis of the system's intended performance in the situation in which the Stark incident occurred. This is certainly more than "dockside rumor," Zuckerbraun, 935 F.2d at 548, but would nonetheless not prove that the Phalanx system was intended to destroy the Iraqi missile in these circumstances, much less to prove why it failed to do so. Plaintiffs have failed to demonstrate that this evidence is available to them as unclassified information. Accordingly, we conclude that dismissal was appropriate.

## B.

Defendants also urge that dismissal was appropriate because the state secret privilege would deprive them of a valid defense. The contractors contend that "privileged state secrets are essential to the defense to plaintiffs' claim," because "resort to classified information would be necessary even to cross-examine plaintiffs' witnesses on the most basic points of their testimony."

Most courts that have discussed the state secret privilege have adopted the position that, if privileged information would establish a valid defense, then the court ought to dismiss the plaintiffs' case. Zuckerbraun, 935 F.2d at 547; In re United

8

<u>States</u>, 872 F.2d at 481; <u>Molerio v. F.B.I.</u>, 749 F.2d 815, 821 (D.C. Cir. 1984); <u>Ellsberg v. Mitchell</u>, 709 F.2d 51, 65 (D.C. Cir. 1983). This circuit has not yet ruled on the effect of the state secret privilege on the availability of defenses and we decline to do so here where it is unnecessary to resolve the case before us.

C.

Even if we found that Bareford had made out a prima facie case with unprivileged information, we conclude that the state secret doctrine would nonetheless bar the plaintiffs' action because any further attempt by the plaintiffs to establish a prima facie case would threaten disclosure of important state secrets. <u>Farnsworth Cannon</u>, 635 F.2d at 281; <u>see also</u> <u>Bowles v. United States</u>, 950 F.2d 154, 156 (4th Cir. 1991) (holding case must be dismissed "where no amount of effort or care will safeguard the privileged information"). The state secret doctrine justifies dismissal when privileged material is central "to the very question upon which a decision must be rendered." <u>Fitzgerald v. Penthouse International, Ltd.</u>, 776 F.2d 1236, 1244 (4th Cir. 1985).

In <u>Fitzgerald</u>, for instance, the court affirmed the district court's dismissal, even though the plaintiff intended to produce only non-privileged information to support his case. Fitzgerald was a former Navy contractor who had conducted experiments with dolphins in order to design torpedoes. Penthouse magazine published a story that, in part, alleged that Fitzgerald had distributed brochures describing the experiments to countries outside the United States and that these brochures contained

9

classified information. The plaintiff brought a libel action against Penthouse, contending that the information in the brochures was not classified.

To prove falsity, the plaintiff intended to call an official from the Pentagon's Branch of Security Policy to testify that the information was not classified. The Navy, however, intervened to invoke the state secret privilege, stating that, although the official's testimony would ostensibly be about non-classified information, there was a considerable danger that classified information would leak during cross-examination. The district court dismissed the plaintiff's action, finding that "the very subject of this litigation is a state secret." 776 F.2d at 1243.

The Fitzgerald court referred at length to the Secretary of the Navy's affidavit in which the Secretary stated that, while some uses of the marine mammal program were not classified, others were highly classified. By calling experts to testify about non-classified uses, the court saw a danger that "state secrets could be compromised even without direct disclosure by a witness." Fitzgerald, 776 F.2d at 1243. For instance,

> if a witness is questions about facts A and B, the witness testifies that fact A is not a military secret, and the government objects to any answer regarding fact B, by implication one might assume that fact B is a military secret.

Id. at 1243 n.10.

In Farnsworth Cannon, the plaintiffs alleged that a Navy Department employee, Grimes, had tortiously interfered with the plaintiffs' contractual relations with the Navy Department by

10

cancelling the plaintiffs' contracts with the Department.  The plaintiffs did not request discovery from the government and the subject of the litigation--the defendant's motivations in cancelling some Navy contracts--seemed remote from the content of the state secrets contained in the contracts themselves.  Nevertheless, the en banc court vacated the original panel opinion and held that the case presented too great a risk of disclosure of state secrets to go to trial.

Fitzgerald and Farnsworth Cannon recognize the practical reality that in the course of litigation, classified and unclassified information cannot always be separated.  In some cases, it is appropriate that the courts restrict the parties' access not only to evidence which itself risks the disclosure of a state secret, but also those pieces of evidence or areas of questioning which press so closely upon highly sensitive material that they create a high risk of inadvertent or indirect disclosures.  There is little question that the design and limitations of the Phalanx weapons system are matters "which reasonably could be seen as a threat to the military interests . . . of the nation."  Halkin v. Helms, 690 F.2d 977, 990 (D.C. Cir. 1982).  As Judge Winters noted in Zuckerbraun, "the disclosure of secret data and tactics concerning the weapons systems of the most technically advanced and heavily relied upon of our nation's warships may reasonably be viewed as inimical to national security."  935 F.2d at 547.

11

Plaintiffs would present the testimony of former Navy Captain Brindel, commanding officer on the Stark, and of former General Dynamics employees. These witnesses have each had access to highly sensitive data. They would be questioned about their knowledge of the Phalanx's operation and defects. Perhaps some of this evidence is unclassified, as plaintiffs contend, or is contained in Congressional reports and other public sources. But the danger that witnesses might divulge some privileged material during cross-examination is great because the privileged and non-privileged material are inextricably linked. We are compelled to conclude that the trial of this case would inevitably lead to a significant risk that highly sensitive information concerning this defense system would be disclosed.

The government maintains that, even if the data is available from non-secret sources, acknowledgement of this information by government officers would still be damaging to the government, because the acknowledgement would lend credibility to the unofficial data. Fitzgibbon v. Central Intelligence Agency, 911 F.2d 755, 765-66 (D.C. Cir. 1990); Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1370 (4th Cir.), cert. denied, 421 U.S. 908 (1975); and Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983). These cases stand for the proposition that disclosure of information by government officials can be prejudicial to government interests, even if the information has already been divulged from non-government sources. Afshar, 702 F.2d at 1130 ("Official acknowledgement by an authoritative source might well be

12

new information that could cause damage to national security"). This contention has a troubling sweep, but we do not rest upon it, because we need not.

Plaintiffs argue that dismissal of their case was an overly harsh remedy for the potential security risk posed by the trial of this case. Dismissal is a harsh sanction. But the results are harsh in either direction and the state secret doctrine finds the greater public good--ultimately the less harsh remedy--to be dismissal. Where "assertion of the privilege precludes access to evidence necessary for the plaintiff to state a prima facie claim, dismissal is appropriate." Zuckerbraun, 935 F.2d at 547. No intermediate solution such as those proposed by plaintiffs, as ably and creatively as their counsel has put it, can fully protect the United States' interest in keeping its state secrets undisclosed.

## III.

The district court dismissed the claims on the alternative ground that they presented a non-justiciable political question outside the competence of the federal courts. We affirm on other grounds. We do not address this argument and express no opinion about its applicability.

## IV.

Bareford raises two due process objections to the procedures of the district court. First, they argue that the district court should have provided a transcript of the proceedings that occurred during the ex parte, in camera proceeding. Second, the plaintiffs

13

argue that the district court should have given the plaintiffs more notice of the ex parte, in camera hearing.

Bareford's counsel was notified of the government's intent to produce more documents to the district court in camera on the same day that the court began its in camera review of these documents. Bareford contends that this does not constitute adequate notice for the plaintiffs to make a timely objection to the in camera proceeding. The government contends that this notice was sufficient to allow the plaintiffs' counsel to raise objections to the in camera proceeding on the following day, when the district court conducted the hearing on the defendants' motion to dismiss. The government should have provided notice to allow the plaintiffs to object to the in camera proceeding before it occurred. United States v. Hall, 854 F.2d 1036, 1042 (7th Cir. 1988) (party should have notice of request for in camera review adequate to allow party to respond to request). This error does not require reversal, however, because Bareford's claim is dismissed without relying upon the materials produced by the government in camera. Any error was therefore harmless.

The district court did not provide a transcript of the in camera proceeding. This court cannot review a proceeding of which no record was made. United States v. Southard, 700 F.2d 1, 11-12 (1st Cir.), cert. denied sub nom. Ferris v. United States, 464 U.S. 823 (1983) (district court should make transcript of in camera proceeding). For the reasons indicated above, however, any error in the in camera hearing was harmless.

14

V.

Plaintiffs challenge on First Amendment grounds the district court order to the parties not to communicate any information about the litigation to anyone except essential legal staff. This question is moot.

AFFIRMED.