McDONNELL DOUGLAS CORPORATION and General Dynamics Corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 91–1204C.

United States Court of Federal Claims.

Nov. 1, 1993.

Francis M. Gaffney, Sonnenschein, Nath & Rosenthal, St. Louis, MO, for plaintiff McDonnell Douglas Corp.; Herbert L. Fenster, McKenna & Cuneo, Washington, DC, for plaintiff Gen. Dynamics Corp.

Mary Mitchelson, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Plaintiffs McDonnell Douglas and General Dynamics contracted with the Navy to develop a low-observable (Stealth) aircraft known as the A–12. Defendant terminated the contract for default. As one defense to the default termination, plaintiffs alleged that defendant breached its duty under the superior knowledge doctrine. During discovery, the United States invoked the state secrets privilege and filed a supplemental declaration by General Merrill A. McPeak describing the risks of litigating plaintiffs' superior knowledge claims. The declaration persuaded us that the superior knowledge claims could not be tried safely.

We ordered termination of discovery in August. This opinion will explain that Order and related actions of this court, to the extent possible on the public record. Further explanation which may be necessary

will be filed under the appropriate classification.

## I.

Plaintiffs' contract to build a Stealth airplane was a closely held, unacknowledged military secret at the time it was entered into by the parties. Stealth technology was then and is today protected within compartmented "Special Access Programs." Special Access Programs are reserved for our nation's most sensitive secrets, and they impose stringent security restrictions to safeguard such information to a greater degree than Secret or Top Secret information. *See* Exec. Order No. 12,356, 3 C.F.R. 166, 174 (1983); *see also* 32 C.F.R. § 20001.45 (1993). Information from Special Access Programs may not be disclosed to a person with a Secret or Top Secret clearance unless the appropriate agency has specifically authorized access to the information for that person.

Security measures protecting information in this case are extensive. Plaintiffs are sophisticated corporations whose business is developing highly sensitive technology for the United States. Their experience and discretion in handling even the most sensitive secrets are not questioned by the Government. Members of the litigation teams and court staff possess Top Secret security clearances. The court is assisted by professional security officers who are trained to safeguard classified information. Discovery in this case is protected by elaborate means under the supervision of the appropriate government agencies. Special Protective Orders control clearance and attorneys' access. To the extent that procedures are available to protect national secrets in a judicial setting, those procedures are in place.

## II.

To avoid wasteful litigation over routine discovery disputes, we met regularly with the parties in informal discovery conferences. During one such meeting, an attorney for General Dynamics reported that a request on his behalf for access to certain classified information had been pending with the Government for months. He informed the court that approval of this request for access was necessary to enable an employee of General Dynamics to discuss certain aspects of this case with him. We asked defendant to investigate the extraordinary delay, and instructed security officers assigned to the court to do the same.

A security officer reported that the request for access had been delayed by a member of the Navy's litigation team. The apparent participation of defendant's lawyer in this process was disturbing because security matters and litigation matters were to remain separate to protect the integrity of the litigation. A Protective Order in place prohibited members of defendant's litigation team from participating in matters involving attorney access. We did not pursue this irregularity at the time because counsel for defendant represented that the request for access had been forwarded to the appropriate officials.

Defendant informed the court that the Air Force was the responsible agency to address the matter, and that it would do so in due course. Later, the Air Force denied the request for access. Defendant provided no explanation for this denial, but its attorneys understood what the Air Force was shielding from plaintiff's counsel.

Because defendant would not explain the denial of access, we requested an explanation from the Air Force. An Air Force security officer provided a general explanation of what classified information was being protected, and why the Air Force had denied plaintiff's request for access. The Air Force had not authorized anyone access to the information for purposes of this litigation. The Navy litigation team had obtained access by other means.[1]

1. During the deposition of a government witness, defense counsel deliberately elicited classified, compartmented information to further the government's case on the merits. The Air Force had responsibility for this information and had not authorized access to anyone for purposes of this litigation. The seriousness of this security

At a hearing to address the access problem, defendant argued that plaintiffs' counsel should propound an interrogatory that would elicit a response containing the information requiring authorized access. Defendant would then refuse to provide the response. After exchanges of a motion to compel and defendant's reply, the parties would argue the matter in due course. That is, plaintiffs' counsel should guess what information their clients sought to communicate to counsel and submit an interrogatory requesting that information before defendant would explain why it was refusing to permit communication from plaintiffs' employees to their counsel.

Plaintiff's counsel could not propound such an interrogatory because he did not know what his client knew. Plaintiff General Dynamics was seeking authorization from the Government to enable its employee to discuss certain aspects of its case with its counsel. Plaintiffs' counsel could not participate effectively in the resolution of this access problem because they did not know the nature of the information being withheld, or why the refusal to authorize the communication unfairly prejudiced their case.[2]

The result was that plaintiffs could not participate in the adversarial process. *See Ellsberg v. Mitchell*, 709 F.2d 51, 59 (D.C.Cir.1983) ("Ignorant of what in fact has been withheld, [plaintiffs] are able only to say that 'too much' has been shielded. The tasks of posing and answering more specific questions therefore devolve on us."), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984). However, we did not favor resorting to *ex parte, in camera* procedures. *See, e.g., In re Taylor*, 567 F.2d 1183, 1187–88 (2d Cir.1977) ("*In camera* proceedings are extraordinary events in the constitutional framework be-

cause they deprive the parties against whom they are directed of the root requirements of due process...."); *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C.Cir.1976) (favoring preservation of adversarial process over resorting to *in camera* examination when resolving issues).

To preserve a semblance of the adversarial process, we asked the Air Force to provide a "modified briefing" to one attorney for each plaintiff. The modified briefing that we contemplated required only that the Air Force explain the situation to plaintiffs' counsel so they would have some understanding of the serious problem which had arisen.

The modified briefing would not have divulged data that might be contained in other Special Access Programs. Rather, we asked the Air Force to segregate certain sensitive information from the less sensitive. We did not believe that providing this modified briefing to two attorneys with Top Secret clearances who had been entrusted with other Special Access information would endanger national security. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 401 (D.C.Cir.1984) ("There is no single rule which will determine when disclosure will present a harm to national interests. The grounds for finding such harm will vary from case to case, depending upon the nature of the information at issue, to whom it will be disclosed, and the means available to limit its dissemination."). Acting Secretary of the Air Force Donley would not agree to the modified briefing.

We ruled that defendant could not preclude disclosure of the information unless the Government asserted a privilege permitting it to do so. Defendant had to either permit the contractor's employee to

violation required Air Force officials to take extraordinary corrective action.

Defendant's counsel later argued that unauthorized access to classified information by the Navy's litigation team was of no concern to the court because it was an internal matter for the Executive. The fact is that improper disclosures have threatened the integrity of the litigation, and therefore they are a paramount concern to the court. The Secretary of the Air Force had

advised us that such unauthorized disclosures in this litigation could cause exceptionally grave damage to our nation's security.

2. The General Dynamics employee filed a classified affidavit summarizing the information he wished to convey to counsel. We reviewed the affidavit *in camera*, and defendant's litigation team reviewed it; plaintiffs' counsel could not.

discuss the information with counsel, or invoke a privilege precluding the communication. To preclude the communication, defendant filed a declaration by Acting Secretary Donley formally invoking the state secrets privilege recognized by the Supreme Court in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). The Secretary also executed a classified *in camera* declaration explaining the need to invoke the privilege. The information is now privileged, and cannot be disclosed to plaintiffs' counsel. *In re United States,* Misc. No. 374 (Fed.Cir. April 30, 1993) [1 F.3d 1251 (table)].

### III.

Most courts have held that privileged information should be removed from the case entirely. The issue then is whether the case can proceed without the information. *See, e.g., Bareford v. General Dynamics Corp.,* 973 F.2d 1138, 1141 (5th Cir.1992); *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 547–48 (2d Cir.1991); *Ellsberg v. Mitchell,* 709 F.2d at 64–65. We asked plaintiffs to show that they could proceed with the information known to be available. Plaintiffs satisfied the court that they could do so despite the restrictions imposed thus far, albeit with difficulty. Thus, we could not find they were "manifestly unable to make out a *prima facie* case without the requested information." *Ellsberg v. Mitchell,* 709 F.2d at 65.

Defendant then asked for dismissal of plaintiffs' superior knowledge claims because information excluded from the case was inextricably intertwined with the merits, and might contain evidence refuting plaintiffs' *prima facie* case. We continued ruling on the matter pending a showing by defendant that litigating these claims would unfairly prejudice the Government. *McDonnell Douglas Corp. v. United States,* No. 91–1204 (Fed.Cl. June 21, 1993). We also ruled that these claims would not proceed to trial if discovery would pose an unacceptable risk to national security. *Id.*

We could not permit defendant to rely on the mere unavailability of certain informa-

tion to show prejudice to its case. Defendant was required to show either that the privilege deprived it of a valid defense or that the subject matter of the claims was inseparable from privileged military secrets. *Bareford v. General Dynamics Corp.,* 973 F.2d at 1141. In *Molerio v. FBI,* the defendant "specifically set forth [its defense]" through *in camera* declarations relating information protected by the state secrets privilege. 749 F.2d 815, 825 (D.C.Cir.1984). Defendant's showing in *Molerio* was conclusive. *Id.* In this case, defendant did not make such a showing, so we could not find that plaintiffs' superior knowledge claims must be dismissed for lack of merit, or that invocation of the state secrets privilege deprived defendant of a conclusive defense.

### IV.

We urged defendant to make a comprehensive determination of information subject to the state secrets privilege, as in *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d at 548–53 (declaration of Secretary of the Navy Garrett). Such a declaration would have avoided further *in camera* proceedings and detailed examinations of specific military secrets. *McDonnell Douglas v. United States,* No. 91–1204, slip op. at 3 (Fed.Cl. June 21, 1993). Defendant chose not to do so.

Instead, defendant filed the declaration of General Merrill A. McPeak, Acting Secretary of the Air Force. General McPeak described the threat of unauthorized disclosure of military and state secrets, and warned about "the nature and classification" of the information necessary to resolve plaintiffs' superior knowledge claims. The General stated that further litigation "would present a continuing threat of disclosure of information for which the military and state secrets privilege has been asserted, and would present a need for disclosure of additional information over which I would assert the privilege." General McPeak concurred with Acting Secretary Donley's assertion that "[e]ven if the parties and the Court attempted to take all conceivable precautions, I believe that

there is a substantial risk that national security would be threatened by disclosure of these matters, for purposes of this litigation."

We were particularly concerned about General McPeak's assessment that continued litigation of these matters posed an unacceptable risk to national security. General McPeak stated:

> My review of the inquiry which must be made into plaintiffs' 'superior knowledge' claims convinces me that they involve matters that cannot be disclosed in this litigation. For example, the Government would not be able to provide complete answers to the many questions raised ... because such responses would implicate matters for which the military state secrets privilege applies. Relatively straightforward questions concerning plaintiffs' 'superior knowledge' claims asked in depositions, or at trial, would pose unacceptable risks of disclosure of classified, special access information to individuals not authorized to receive such information.

Ironically, defendant's own security lapses have validated General McPeak's concern.

## V.

■ General McPeak's assessment of the risk to national security is dispositive in light of the Federal Circuit's ruling on access to Air Force programs. Discovery of plaintiffs' superior knowledge claims required access to the Air Force's B–2 (Stealth bomber) and F–117A (Stealth fighter) programs. Secretary of the Air Force Donald Rice restricted plaintiffs' access to only 10 members of plaintiffs' litigation team at one time. When plaintiffs sought permission to add two additional cleared persons who could provide technical assistance, defendant insisted that two persons already cleared (necessarily two of plaintiffs' four attorneys) be "de-accessed" because having more than 10 persons accessed at one time constituted an unacceptable risk to national security. Ten persons could review Stealth secrets at one time, but not 12. In theory, an infinite number of persons would be allowed to see

the Stealth secrets, so long as they did so in groups of 10. Defendant offered no explanation for this logical anomaly, and took the position that it was not required to do so. It did not invoke the state secrets privilege.

We sought some rationale for a decision which otherwise seemed definitive of the term "arbitrary." Defendant argued that the Secretary's assessment of what constituted an unacceptable risk to national security was committed to his absolute discretion. The Federal Circuit ruled on this point that Secretary Rice's judgment is not reviewable. *In re United States*, Misc. No. 370, slip op. at 15–16 (Fed.Cir. April 19, 1993) [1 F.3d 1251 (table)]. Therefore, General McPeak's conclusion that litigating this portion of the case would risk our nation's security cannot be questioned by this court.

General McPeak declared: "Litigation of plaintiffs' 'superior knowledge' claims would present a continuing threat of disclosure of information for which the military and state secrets privilege has been asserted." We understand the rationale for this statement because of information available to the court *in camera.* While plaintiffs cannot respond to this information, we must hold that further litigation of plaintiffs' superior knowledge claims could reasonably be expected to compromise military secrets. *See, e.g., Fitzgerald v. Penthouse International, Ltd.*, 776 F.2d 1236, 1243 (4th Cir.1985); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir.1980) (en banc).

## VI.

■ We cannot resolve the merits of plaintiffs' superior knowledge claims. The information concealed by the state secrets privilege is such that its effect on the merits is not readily apparent. We ruled that plaintiffs could establish a *prima facie* case, and that privileged information known to this court does not clearly establish that defendant could refute that showing. Existing case law does not provide clear guidance for resolving this issue.

In *Attorney General of the United States v. The Irish People, Inc.,* the trial court erred in dismissing an action "when information which 'might' be relevant [to a defense] is unavailable for discovery." 684 F.2d 928, 951 (D.C.Cir.1982). The court stated that "even if defendant would normally be entitled to discovery, it does not follow that, if there can be no discovery in the particular case, dismissal is the only choice available to the court." *Id.* at 950. The court listed factors that should be considered in determining what effect invocation of the state secrets privilege should have on the case. *Id.* at 951. Such a balancing of interests may not apply to the circumstances of this case.

Plaintiffs' superior knowledge claims are too complex to be resolved through a selective *ex parte, in camera* examination of evidence. *Cf. Heine v. Raus,* 399 F.2d 785, 791 (4th Cir.1968). The nature of the information involved likely would preclude the court from finding facts with the degree of certainty that justice requires.

The parties agree that if these claims cannot be litigated for the reasons stated, then the party bearing the burden of proof on the superior knowledge issue cannot prevail. Plaintiffs contend that defendant terminated the contract for default, so defendant bears the burden of showing that it did not breach its duty under the superior knowledge doctrine. Plaintiffs made a colorable claim that the duty applies in the circumstances of this case, and they had available the means to make a *prima facie* showing. Defendant responds that the Government cannot be penalized for invoking the state secrets privilege to protect sensitive matters in litigation, and that the superior knowledge claims must be dismissed.

The parties disagree on the question of where the burden of proof lies. No cases addressing this issue have been cited to date.

## CONCLUSION

The parties will address the following issues:

1. Whether we should remove counts VI through XI from the case to the extent that they rely on the allegation that defendant breached its duty under the superior knowledge doctrine;

2. Whether we should make findings regarding the manner in which defendant controlled access to classified information prior to invocation of the state secrets privilege by Acting Secretary Donley; and

3. Whether we should enter judgment for plaintiffs if defendant's invocation of the state secrets privilege precludes them from litigating their superior knowledge claims.

Briefs will be filed concurrently no later than November 19, 1993.