1 F.3d 1251
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 In re UNITED STATES, Petitioner.
 Misc. No. 374.
 United States Court of Appeals, Federal Circuit.
 April 30, 1993.
 
 Before ARCHER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.
 ON PETITION FOR WRIT OF MANDAMUS
 MICHEL, Circuit Judge.
 
 ORDER
 
 1
 The United States petitions for a writ of mandamus to direct the Court of Federal Claims to vacate its April 12 and April 14, 1993 orders requiring the Air Force to grant special access to plaintiffs' counsel to certain classified, special access programs and information controlled by the Air Force for which the Acting Secretary of the Air Force had formally asserted the Military and State Secrets Privilege.[1] The trial court rejected the assertion of privilege without finding it was improperly or inappropriately invoked and ordered disclosure of the military secrets involved. It denied the government's motion for protective order and for a stay and for certification. The government then filed the instant petition. McDonnell Douglas Corporation and General Dynamics Corporation oppose. Extensive submissions have been filed by both parties. We grant the petition.
 
 BACKGROUND
 
 2
 This is the second government mandamus petition to arise from discovery disputes in a lawsuit by McDonnell Douglas and General Dynamics against the United States because of the Department of the Navy's termination for default of their contract to produce a stealth attack aircraft called A-12 for basing on aircraft carriers. In the suit, McDonnell Douglas and General Dynamics claimed, inter alia, that the United States breached an implied duty to share with the contractors "superior knowledge" about problems in producing stealth aircraft, and their solution, which was discovered in earlier production of the B-2 and F-117A stealth aircraft by other manufacturers. In this regard, McDonnell Douglas and General Dynamics sought discovery from the Department of the Air Force concerning several classified, special access programs.
 
 
 3
 A dispute concerning the Court of Federal Claims' authority to review and reverse a determination by the Acting Secretary of the Air Force regarding the number of persons granted access to documents subject to "special access" restrictions was the subject of the earlier mandamus petition, misc. no. 370. We issued a writ of mandamus directing the Court of Federal Claims to vacate its order which had required the Air Force to allow two additional persons access to the two special access programs involved there.
 
 
 4
 The dispute here arises from counsel for McDonnell Douglas and General Dynamics' request for access to certain highly classified information, mostly from other special access programs. In contrast to the earlier petition, here the question is not whether the trial court can review the Acting Secretary's decision as to how many individuals may have access to the original data which the government agreed to disclose but whether the trial court may order access for the plaintiffs' counsel for additional special access programs, in the face of the assertion of the Military and State Secrets Privilege.
 
 
 5
 The following is a chronology of actions by the Court of Federal Claims that created this issue.
 
 
 6
 A. The Court of Federal Claims' March 18, 1993 Order
 
 
 7
 In February 1993, plaintiffs' attorneys orally and informally sought intervention by the trial court regarding certain highly classified and compartmented information known to some General Dynamics' employees, to which plaintiffs' attorneys desired access. The government objected. On March 18, 1993, the trial court issued an order stating: "Defendant may not preclude disclosure of relevant Air Force information to plaintiffs' counsel unless it can show that such information may be withheld in accordance with an established privilege." (Emphasis added.)
 
 
 8
 B. The Court of Federal Claims' March 23, 1993 Order
 
 
 9
 On March 23, the trial court conducted a hearing to address the issue of disclosure of the requested information to plaintiffs' counsel. Later that same day, the court issued an order stating: "Defendant will disclose to plaintiffs' attorneys information currently being withheld, no later than 5:00 p.m. on Tuesday, March 30, 1993."
 
 
 10
 On March 30, 1993, the United States moved for a protective order, formally invoking the Military and State Secrets Privilege. The privilege was invoked in an unclassified, public declaration signed by the Acting Secretary of the Air Force, Michael B. Donley. In the declaration, Acting Secretary Donley stated that he "personally review[ed] and consider[ed]" the matters at issue and that he "personally determined" that disclosure of the information "could be expected to cause exceptionally grave damage to national security." The Acting Secretary generally explained the threat to national security and stated that an ex parte, in camera, classified declaration by him explained the threat more specifically. Both the public declaration and the in camera, classified declaration have been reviewed by the trial court and by this court.[2]
 
 
 11
 C. The Court of Federal Claims' March 31, 1993 Order
 
 
 12
 On March 31, the trial court issued an order raising three issues for the government's response. The trial court asserted that the wording of the public declaration "raise[s] the question of whether [Acting Secretary Donley] is the proper individual to invoke the privilege." Second, the trial court noted that the declaration does not address the problem of the government's disclosure of "such matters to [government] attorneys in this case for purposes of this litigation." (Emphasis added.) Finally, the trial court stated that the United States' motion "does not address the problem of plaintiffs' communications with their attorneys." The trial court also said that "plaintiffs have crucial knowledge that is being withheld from plaintiffs' counsel." (Emphasis added.)[3] The trial court scheduled a hearing for April 2, 1993 to address these issues further. At the hearing, the United States agreed to produce supplemental declarations to address the trial court's stated concerns, and McDonnell Douglas and General Dynamics informed the trial court that they opposed the government's assertion of privilege.
 
 
 13
 D. The Court of Federal Claims' April 7, 1993 Order
 
 
 14
 Following the hearing the United States filed a supplemental public declaration and a supplemental classified declaration. On April 7, the Court of Federal Claims issued an order stating:
 
 
 15
 [Acting] Secretary Donley has shown the court that he is the appropriate official to invoke the states secret doctrine. We have every confidence in [Acting] Secretary Donley and his representative. However, the rightful concerns of the Air Force must be balanced with the court's concern for the integrity of the adversary process. Plaintiffs must be permitted to discuss their case with their counsel.
 
 
 16
 (Emphasis added.) As noted, however, the employees are not "plaintiffs," it is not "their case" but the corporations' cases and the lawyers are not "their counsel."
 
 
 17
 The court warned that unless the parties could agree to stipulations that would obviate the need for further inquiry into these sensitive access issues, "it will be the Order of this court that the Air Force give to one representative from the McDonnell Douglas litigation team and one from the General Dynamics litigation team a modified briefing."
 
 
 18
 E. The Court of Federal Claims' April 12, 1993 Order
 
 
 19
 Because the parties were unable to reach such an agreement, the court issued an order on April 12 stating:
 
 
 20
 Defendant invoked the state secrets doctrine to preclude plaintiffs from communicating crucial information to their counsel. Defendant cites no authority for applying the doctrine under these circumstances. We have no choice but to direct the Air Force to provide a modified briefing to an attorney for each plaintiff. and IT IS SO ORDERED.... The motion for protective order is DENIED.
 
 
 21
 By denying the motion for protective order, the court effectively denied the government's assertion of the Military and State Secrets Privilege.
 
 
 22
 In an effort to protect the classified information from disclosure, the government then moved for a stay of the trial court's order requiring disclosure, and for certification of the court's orders for interlocutory appeal.
 
 
 23
 F. The Court of Federal Claims' April 14, 1993 Orders
 
 
 24
 On April 14, the trial court denied the United States' motion for a stay and for certification. In its denial of the motion for certification, the trial court further stated:
 
 
 25
 Our denial of defendant's motion [for protective order] was not a rejection of [Acting] Secretary Donley's concern for the sensitivity of the matters described in his in camera affidavit. We did not reach the merits of the [Acting] Secretary's determination. The issue is not whether plaintiffs may be afforded access to classified information. The issue is whether plaintiffs must be permitted to discuss such information with their attorneys for purposes of this litigation.
 
 
 26
 (Emphasis added.)
 
 
 27
 In the order, the court noted that the plaintiffs' attorneys had top secret security clearances and that the government's counsel did not deny having been granted access to the same information over which the privilege was asserted. The court concluded that because the plaintiffs' attorneys were denied access to the information, the "prejudice to plaintiffs ... is manifest." Accordingly, the court ordered: "Defendant will permit plaintiffs to disclose the information ordered on April 12 to their attorneys no later than 2:00 p.m. on April 16, 1993."
 
 
 28
 On April 16, the United States filed this petition for writ of mandamus for vacatur of the trial court's disclosure orders. This court, ex parte, temporarily stayed the orders pending "consideration" of submissions. As in the earlier mandamus case, the dispositive issue is whether the trial court has legal authority to reverse special access decisions made by a service secretary under Executive Order 12356. That it does not is even clearer in this case where the Military and State Secrets Privilege has been formally invoked as to data that requires special access and the court does not question the legitimacy of the classification or the "sensitivity" of the information. Therefore, we grant the writ.
 
 DISCUSSION
 
 29
 In United States v. Reynolds, 345 U.S. 1 (1953), the Supreme Court explained the considerations for discerning a proper invocation of the Military and State Secrets Privilege. The Court said:
 
 
 30
 The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.
 
 
 31
 Id. at 7-8 (footnotes omitted) (emphasis added). We address these factors seriatim.
 
 A. Head of the Department
 
 32
 1. Personal consideration by appropriate official. In its April 7, 1993 order, the Court of Federal Claims stated that "[Acting] Secretary Donley has shown the court that he is the appropriate official to invoke the states secret doctrine." Neither party disputes that finding. Nor is it disputed that Acting Secretary Donley personally assessed the basis for the assertion of the privilege and formally asserted the claim of privilege.
 
 
 33
 2. Special access determinations are committed by law solely to the agency head. As set forth in more depth in our April 19, 1993 order in In re United States, misc. no. 370, the grant of a security clearance or the authority to determine who or how many persons shall have access to classified information "is committed by law to the appropriate agency of the Executive Branch." Department of Navy v. Egan, 484 U.S. 518, 526-27 (1988). In this case, the member of the Executive Branch who possesses the authority to grant access is the agency head, Acting Secretary of the Air Force Donley. The Acting Secretary derives his authority from Executive Order 12356 which prescribes a uniform system for classifying, declassifying, and safeguarding national security information. The Acting Secretary's authority under the Executive Order derives, in turn, from the constitutional grant of power to the Executive to command the military and to conduct foreign affairs. The kinds of decisions made by agency heads under the Executive Order necessarily are "predictive judgments" delegated solely to them because they "bear the responsibility for the protection of classified information" and not to "outside non-expert bod[ies]," such as administrative agency boards, Egan, 484 U.S. at 529, or courts. In short, it is clear that the Acting Secretary was the only person who had the authority to decide whether this information could be disclosed to counsel, and therefore, his assertion of the privilege is dispositive unless the assertion is shown to be inappropriate, unlawful or fraudulent. No such contention is made here.
 
 
 34
 By ordering a "modified briefing," the trial court clearly usurped the exclusive authority of the Acting Secretary. As the contractors' brief repeatedly indicates, the trial court independently assessed what was adequate to protect national security. The contractors state that the trial court "permit[ted] partial disclosure based on careful scrutiny of the in camera submissions," and that "the trial court properly scrutinized the material with care and concluded that the Government's invocation of the privilege did not preclude a 'modified briefing.' " As characterized by the contractors, "the court concluded that the 'modified briefing' would not pose a danger to national security." (Emphasis added.) Such risk assessment, however, is precisely the type of "predictive judgment" that the Supreme Court in Egan stated was one exclusively for the Executive.[4] Such risk assessments are beyond the competence of courts and their authority.
 
 
 35
 B. "Appropriate Circumstances" for the Assertion of the Privilege
 
 
 36
 As a matter of law, "[t]he occasion for the privilege is appropriate" if the court is satisfied, "from all circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10 (emphasis added). Although the Court of Federal Claims stated in its April 14, 1993 order that it "did not reach the merits of the [Acting] Secretary's determination," the court effectively denied the merits of the Acting Secretary's assertion of the Military and State Secrets Privilege by denying the government's motion for protective order. By ordering a "modified briefing," the court rejected the Acting Secretary's assertion of the Military and State Secrets Privilege and usurped his exclusive power to grant access to special access programs and other classified matter under Executive Order 12356. What, exactly, the trial court meant to include or exclude in the "modified briefing" is unclear. But what is clear is that it would necessarily include information in some form from other special access programs beyond those for which counsel have previously been granted access by the Air Force Secretary. The contractors do not deny this. Rather, they simply state that "the court below did not order that all classified information in the Government's possession concerning the matters at issue be disclosed to Plaintiffs' counsel." (Emphasis added.) By this statement, the contractors effectively admit that the court did order disclosure of some of the classified, compartmented information.
 
 
 37
 Rather than considering whether there was a "reasonable danger" that military secrets would or could be divulged if production of the information was compelled, as required by Reynolds, the Court of Federal Claims instead considered and explicitly based its disclosure orders on the following: (1) the two attorneys who sought the information had already been granted top security clearances and access to other compartmented programs; (2) some of General Dynamics' employees have the information and "must" have a right to disclose the information to counsel; and (3) the Air Force has disclosed the information to the United States' counsel "for purposes of this litigation." We conclude that these three considerations are wholly irrelevant under controlling case law and legally could not substitute for the sole inquiry required under Reynolds: whether there is a "reasonable danger" that military secrets would or could be divulged if production of the data is compelled. Further, we hold that here the circumstances were "appropriate" for assertion of the Military and State Secrets Privilege. Indeed, the trial court did not question the basis for asserting the privilege, stating that it did not reach that issue.
 
 
 38
 (1) While the Court of Federal Claims correctly noted that the contractors' attorneys have been granted access to certain compartmented programs, this cannot mean that they thereby are also granted access to other special access programs. The system of special access programs specifically contemplates that no matter how trustworthy an individual, he may not have access to a particular program except if specifically granted it by the service secretary pursuant to the criteria of Executive Order 12356. As explained by Acting Secretary Donley in his public declaration:
 
 
 39
 An individual [employed by a Defense contractor] may have access to one special access program while his colleagues have access to different special access programs. Despite the fact that the individuals are professional colleagues, that they possess the requisite security clearances, and they work in the same secure facility, such individuals are still prohibited, absent being given access to another program, to share special access information across program boundaries.
 
 
 40
 See Executive Order 12356, Sec. 4.2. Indeed, the contractors admit in their "Opposition to Petition for Writ of Mandamus" that "[t]his case is materially unlike any other in which issues of state secrets privilege have arisen" because "the specific subject matter of the contract at issue included the development and use of classified, compartmented stealth technologies." (Emphasis added.) What they do not acknowledge, however, is that this fact makes it all the clearer that the trial court lacked authority to order disclosure.
 
 
 41
 (2) Similarly, even though certain employees of General Dynamics have knowledge of the special access information sought by counsel, assertion of the privilege may properly preclude future disclosure of that information to anyone, including the contractors' counsel. See Farnsworth Cannon, Inc. v. Grimes, 635 F.2d 268, 281 (4th Cir.1980) (en banc ) (application of the State Secrets Privilege prevented information from being shared with plaintiff's attorney); see also Fitzgerald v. Penthouse Int'l, Ltd., 776 F.2d 1236, 1242 n. 8 (4th Cir.1985) (privilege requires dismissal of case thereby preventing disclosure at trial of classified information despite the fact that one of the parties had "personal knowledge of classified matters within the scope of the state secrets privilege"). Thus, the fact that these employees already have access to the compartmented information sought here does not divest the service secretary of his exclusive authority to control access to other persons or limit his right to assert the privilege to prevent any disclosure in a pending lawsuit. See Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 402-03, n. 9 (D.C.Cir.1984) ("prior disclosure of similar information does not preclude the potential for harm" in future disclosure).
 
 
 42
 The contractors argue that "the trial court was rightly concerned about the effect of the Government's attempted privilege invocation on Plaintiffs' ability to discuss information with counsel, thereby potentially infringing upon Plaintiffs' constitutional right to counsel." Similarly, the contractors assert that the First Amendment also protects the contractors right to confer with their counsel. These arguments are unpersuasive. Because application of the Military and States Secrets Privilege can require complete dismissal of a case, Ellsberg v. Mitchell, 709 F.2d 51, 65 (D.C.Cir.1983), cert. denied sub nom. Russo v. Mitchell, 465 U.S. 1038 (1984), any subsidiary limitation on conferring with counsel which might otherwise be precluded by the constitution cannot apply here.
 
 
 43
 (3) Finally, the fact that the government's attorneys may have reviewed the information at issue here (mistakenly or not) is irrelevant to whether the privilege is still available to prevent disclosures to others. Under the special access rules of Executive Order 12356, each program is separate and each potential "accessee" is a separate issue. Disclosure to anyone beyond those individuals specially granted access by the service secretary--whether they be within the government or within the same corporation as those previously granted access--is strictly forbidden and indeed would create criminal liability. Cf. Halkin v. Helms, 598 F.2d 1, 9 (D.C.Cir.1978) ("The government is not estopped from concluding in one case that disclosure is permissible while in another case it is not."). As correctly noted by the United States in its petition, the United States may not use this information in the litigation, even though the trial court, apparently incorrectly, said the government attorneys had the information "for purposes of this litigation."[5] That the United States' attorneys may have reviewed the compartmented information at issue here is entirely irrelevant to whether there would be a "reasonable danger" to national security if the information is released to someone new, including the contractors' attorneys in connection with this lawsuit. Under Reynolds, that is the sole issue that is judicially reviewable.
 
 
 44
 The trial court erred in this case because it based its decision on extraneous concerns and ignored the sole legal test required by the Supreme Court in Reynolds. The trial court should have confined itself solely to whether there was a "reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10. Courts must give "utmost deference" to necessarily speculative projections contained within such assertions of privilege. See Halkin, 598 F.2d at 9 ("Courts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets.") (quoting United States v. Nixon, 418 U.S. 683, 710 (1974)).
 
 
 45
 In its March 31, 1993 order, the Court of Federal Claims sought to use language from Reynolds to support its position: "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." See Reynolds, 345 U.S. at 9-10 (emphasis added). But this dicta was not written in a vacuum and can mean no more than that the Executive must have a rational basis for its security concern. Plaintiffs do not assert that it did not. Nor did the trial court. Thus, here there is no "caprice." Similarly, the contractors' argument that "[d]eference to the executive's allegations of harm does not mean unquestioning acceptance of every claim of privilege" is unpersuasive. As explained below, neither this court nor the Court of Federal Claims accepted the government's assertion of the privilege "unquestioned." Rather both courts have thoroughly reviewed the Acting Secretary's declarations. Neither court saw any need for in camera review of the underlying documents, the only further step permitted by Reynolds.
 
 
 46
 Moreover, the Supreme Court in Reynolds specifically prohibited trial courts from basing rulings on privilege on their assessment of the parties' need for the information. The Supreme Court concluded that "even the most compelling necessity [for discovery of the information] cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake," id. at 11, i.e., that the classification was not fraudulent or incorrect and the documents did in fact contain military secrets. Plaintiffs do not contend otherwise. Thus, the repeated references in the trial court's orders that the information is "crucial" and "relevant" are not proper considerations in the face of the assertion of the privilege.[6]
 
 
 47
 Similarly, the trial court's references to "balancing" the interests of the government against those of the plaintiffs is also an impermissible legal test under Reynolds. The contractors' argument that "Reynolds requires that such a balancing be performed by the court to determine the validity of the privilege claim" is incorrect. In support of its argument, the contractors quote the following language from Reynolds: "In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted...." Id. The balancing that is suggested by this quotation, however, is not directed to the court's ultimate acceptance or denial of the privilege. Rather, it refers to the trial court's decision as to whether or not something more than just the Acting Secretary's declaration should be reviewed. In other words, in determining whether or not to review the underlying documents, the court may balance the contractors' need for the information against the dubiousness of the government's assertion of the privilege. Once the determination is made whether to require a closer examination of the assertion of the privilege, however, the contractors' need for the information plays no part in a trial court's determination of whether there is a reasonable danger that national security would be threatened by release of the information. Reynolds, 345 U.S. at 11 ("even the most compelling necessity cannot overcome the privilege if the court is ultimately satisfied that military secrets are at stake"); Ellsberg, 709 F.2d at 57 ("When properly invoked, the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege."); Halkin v. Helms, 690 F.2d 977, 990 (D.C.Cir.1982) ("[T]he critical feature of the inquiry in evaluating the claim of privilege is not a balancing of ultimate interests at stake in the litigation. That balance has already been struck.").
 
 
 48
 It is apparent that the Court of Federal Claims did recognize that military secrets were at stake. See, e.g., Order of April 7, 1993 (trial court characterizes the Acting Secretary's national security concerns as "rightful"). But whatever the trial court's view, based on our own review of the classified declaration of Acting Secretary Donley, we agree that the United States has established that there is a "reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Reynolds, 345 U.S. at 10.[7] Therefore, the Court of Federal Claims exceeded its authority in compelling the Air Force to disclose the information to anyone else, even plaintiffs' attorneys.
 
 
 49
 The contractors argue, finally, that mandamus should not issue because the court's orders that the plaintiff's counsel be given a "modified briefing" is consistent with the requirement of Ellsberg, 709 F.2d at 57, that the government's assertion of the privilege should be scrutinized on an item-by-item basis. In Ellsberg, the court did not allow State Secrets Privilege protection for one aspect of the plaintiffs' discovery requests. In particular, the plaintiffs requested to know which Attorneys General authorized a particular surveillance. Because "the government [did] not even purport to explain" why the information must be withheld, the court required disclosure. Id. at 60. Thus, although it is true that the court has the power to disentangle sensitive information from non-sensitive information, in this case the contractors have not even alleged the government's assertion of the privilege is too broad or that it covers any nonsensitive information. Rather, in this case all of the information over which the government has asserted the privilege is plainly sensitive. Compare In re United States, 872 F.2d 472, 478 (D.C.Cir.1989) (stating that an item-by-item determination of the applicability of the State Secrets Privilege was appropriate because, inter alia, a portion of the requested information had already obtained by plaintiff under Freedom of Information Act, 5 U.S.C. Sec. 552 (1982)).
 
 
 50
 Moreover, the trial court apparently did not scrutinize the information over which the privilege was asserted in an effort to segregate any nonsensitive information. There is nothing in the submissions to show that the trial court ever requested or reviewed the underlying documents or stated that it determined any specific document to be non-sensitive. Rather the trial court's order requiring a "modified briefing" applied generally to the requested information.[8]
 
 CONCLUSION
 
 51
 Mandamus is traditionally used, inter alia, to confine a trial court "to a lawful exercise of its prescribed jurisdiction...." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988). A party seeking mandamus, however, must show that the right to the issuance of the writ is "clear and indisputable." Id. We hold that on the record in this case, the United States has shown that the Court of Federal Claims exceeded the "lawful exercise of its prescribed jurisdiction" and the United States has shown that its right to the requested relief is "clear and indisputable." Therefore, we grant the writ.
 
 
 52
 Accordingly,
 
 IT IS ORDERED THAT:
 
 53
 The United States' petition for writ of mandamus is granted. The Court of Federal Claims is directed to vacate its April 12 and April 14, 1993 disclosure orders.
 
 
 
 [1]
 The United States also moved before us for stays of the orders directing disclosure. On April 16, 1993, this court, ex parte, temporarily stayed the orders "pending consideration" of submissions. The contractors oppose the stay pending disposition. The United States moves for leave to file a reply, with reply attached. In view of our disposition of the mandamus petition, the United States' motion for a stay pending disposition and the motion for leave to file a reply are moot
 
 
 [2]
 On April 19, 1993, Circuit Judge Paul R. Michel met with Colonel Hennessey and Mr. Eames of the Air Force to review Acting Secretary Donley's classified declaration. A summary of this review meeting was appended to an order issued by this court on April 19, 1993, which disposed of a motion to make certain records of the review meeting
 
 
 [3]
 Although the Court of Federal Claims stated in this order that "plaintiffs" have access to the information, they do not. The plaintiffs in this case are two corporate entities, McDonnell Douglas and General Dynamics. These corporate entities themselves do not have possession of the military secrets, for they have not been granted special access by the Air Force Secretary. Some of their employees, however, have been granted special access by the Air Force Secretary and do know the secrets, but have no authority to pass them to anyone, except as authorized by the Air Force Secretary. See Executive Order 12356
 
 
 [4]
 The contractors assert that "the instant mandamus petition does not deal with any issue involved in [Egan ], and the Government has not cited Egan as support for its argument." While the government does not cite Egan, the government's argument implicitly implicates it. The government states: "[I]n devising and attempting to implement a 'modified briefing' procedure, wholly of its own creation, the trial court is attempting to undertake the actual micro-management of control over this Nation's military secrets."
 
 
 [5]
 It does not appear that the government has the information "for purposes of the litigation." Although certain government attorneys may be aware of the information, that does not mean that the government has the information for the litigation. Contrary to the trial court's statement that "the defendant's attorneys have used such information for tactical purposes involving the merits of plaintiffs' superior knowledge claim," nothing in the submissions indicates that the government has so used the information. To have used the information, it seems the government would have had to file ex parte submissions for consideration by the judge. No such submissions appear to have been made
 
 
 [6]
 We need not decide the degree of importance of the information at issue to the contractors' ability to prove their case as alleged. The United States admits that some courts have placed emphasis on the degree of necessity that a party has for the information, citing American Civil Liberties Union v. Brown, 619 F.2d 1170, 1173 (7th Cir.1980) (en banc ) (vacating the district court's order requiring production of documents despite assertion of the State Secrets Privilege and remanding for an in camera determination of the necessity for the records sought because the claim of state or military secrets appeared "dubious") and Jabara v. Kelley, 75 F.R.D. 475 (E.D.Mich.1977). We view Brown and Jabara as support for no more than that the trial court may require ex parte in camera inspections of information if necessity for the information is great, and if assertion of the State Secrets Privilege seems questionable. This reading of Brown and Jabara is consistent with Reynolds. See Reynolds, 345 U.S. at 11. In the present case, neither the trial court nor the plaintiffs even argued that the Acting Secretary's invocation of the privilege was dubious. On the contrary, the trial court characterized the Acting Secretary's national security concerns as "rightful." In any event, we hold, post, that the assertion was "appropriate."
 
 
 [7]
 As explained supra note 2, this court has inspected the classified declaration of Acting Secretary Donley. That declaration specifically and convincingly explains the highly sensitive nature of the military secrets at stake and the legitimacy of their classification at the very highest levels
 
 
 [8]
 The fact that the concept of a "modified briefing" apparently resulted from an informal conversation with Colonel Hennessey also suggests that the court did not scrutinize the documents in order to segregate nonsensitive information from sensitive information